STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2023 KA 0815

STATE OF LOUISIANA

VERSUS

JESSIE JAMES BAKER

Judgment Rendered: __APR 1 9 2024__

Appealed from the
21st Judicial District Court
In and for the Parish of Tangipahoa
State of Louisiana
Docket No. 1500445

The Honorable Brenda B. Ricks, Judge Presiding

Scott M. Perrilloux
District Attorney
Le'Anne H. Malnar
Brett Sommer
Assistant District Attorneys
Amite, Louisiana

Counsel for Appellee,
State of Louisiana

Ravi G. Shah
Covington, Louisiana

Counsel for Defendant/Appellant,
Jessie James Baker

BEFORE: McCLENDON, HESTER, AND MILLER, JJ.

**MILLER, J.**

The defendant, Jessie James Baker, was charged by bill of information with illegal carrying of weapons, a violation of La. R.S. 14:95(E)[1] (Count I) related to possession of a firearm while unlawfully in possession of a controlled dangerous substance, and possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1[2] (Count II), each with an offense date of January 16, 2015. He pled not guilty. Following a jury trial, the defendant was found guilty on both counts. On Count I, the defendant was sentenced to ten years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. On Count II, he was sentenced to twenty years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. These sentences were the maximum allowed within the range provided for the respective felonies. The sentences were ordered to run concurrently. The defendant appealed; and after review, this court affirmed the defendant's convictions. See State v. Baker, 2020-1253 (La. App. 1st Cir. 11/1/21), 332 So. 3d 692. The defendant did not assign error as to his sentence, which was only reviewed as to patent error.

The State then filed a habitual offender bill of information accusing the defendant of a previous conviction.[3] Following a hearing, the trial court adjudged the defendant a second-felony offender on both counts and vacated the corresponding previously-imposed sentences. Based on the adjudication, the trial court resentenced the defendant as follows: on Count I, to forty years

_____

[1] Section (E) of La. R.S. 14:95 was subsequently amended and reenacted by La. Acts 2016, No. 543, §1. However, for purposes of our discussion herein, we will apply the version of La. R.S. 14:95(E) in effect at the time the defendant was charged.

[2] The penalty provision of La. R.S. 14:95.1, Section (B), was subsequently amended and reenacted by La. Acts 2017, No. 281, §1, to reduce the minimum term of imprisonment from ten to five years. For purposes of our discussion herein, however, we will apply the version in effect at the time the defendant was charged.

[3] The State identified the predicate offense as the defendant's October 25, 2005 conviction for attempted armed robbery, under Twenty-First Judicial District Court Docket No. 95168.

imprisonment at hard labor, without benefit of probation, parole, or suspension of sentence; and on Count II, to forty years imprisonment at hard labor.[4] The trial court ordered that the sentences imposed run concurrently. On August 29, 2022, the defendant filed a Motion to Reconsider Sentence which, following a hearing, the trial court granted in part, resentencing him on Count I to twenty years imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. As to Count II, the defendant's sentence remained unchanged, with the trial court denying any reconsideration thereof. These sentences were the maximum allowed under the applicable habitual offender law.

The defendant now appeals, arguing that the trial court erred in denying in part his Motion to Reconsider Sentence and by otherwise imposing unconstitutionally excessive sentences on both Counts I and II. For the following reasons, we affirm the defendant's habitual offender adjudication, vacate the sentence, and remand for resentencing with instructions.

## FACTUAL HISTORY

Though more fully recounted in our previous opinion, on January 16, 2015, Officer Henry Dejean ("Officer Dejean"), with the Hammond Police Department, was part of a street crimes unit surveilling the Blue Store on Range Road when he observed the defendant drive into the parking lot and complete, what he believed to be, a hand-to-hand drug transaction. Officer Dejean followed the defendant, initiated an investigatory stop, and, upon speaking to the defendant, smelled marijuana emanating from the vehicle. When Officer Dejean asked the defendant to step out of the vehicle, the defendant started the engine, and attempted to leave. Officer Dejean reached into the vehicle to stop the defendant, a struggle ensued,

---

[4]We note that when imposing the sentence on Count II, the trial court did not state that the sentence would be served without the benefit of probation, parole, or suspension of sentence. See La. R.S. 14:95.1(B). Nonetheless, as La. R.S. 15:301.1(A) provides, any applicable "without benefits" provision is self-activating. See State v. Howard, 2018-0317 (La. App. 1st Cir. 9/21/18), 258 So. 3d 66, 72, n.1, writ denied, 2018-1650 (La. 5/6/19), 269 So. 3d 692.

3

and the defendant reached for the center console where Officer Dejean saw a handgun. Eventually, through the assistance of backup, the defendant was taken out of his vehicle, and the officers found a bag of marijuana on the defendant's person. Additionally, a fully loaded handgun, with a live round in the chamber, was seized from the vehicle. The K-9 unit then arrived, with the K-9 dog alerting on the defendant's vehicle. The vehicle was searched, and suspected marijuana shavings were found on the floorboard. See Baker, 332 So. 3d at 694-95.

## DISCUSSION

On appeal, the defendant contends that the trial court erred: (1) in denying in part his Motion to Reconsider Sentence; and (2) by imposing the maximum available sentences on both counts, which he claims are unconstitutionally excessive. The defendant does not contest his adjudication as a second offender.

Both the United States and Louisiana Constitutions prohibit the imposition of cruel or excessive punishment. U.S. Const. amend. VIII; La. Const. art. I, § 20. Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So. 2d 762, 767 (La. 1979). A sentence is unconstitutionally excessive if it is grossly disproportionate to the severity of the offense or constitutes nothing more than a purposeless and needless infliction of pain and suffering. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks one's sense of justice. State v. Livous, 2018-0016 (La. App. 1st Cir. 9/24/18), 259 So. 3d 1036, 1044, writ denied, 2018-1788 (La. 4/15/19), 267 So. 3d 1130. The trial court has great discretion in imposing a sentence within the statutory limits, and such a sentence will not be set aside as excessive in the absence of an abuse of discretion. State v. Scott, 2017-0209 (La. App. 1st Cir. 9/15/17), 228 So. 3d 207, 211, writ denied, 2017-1743 (La. 8/31/18), 251 So. 3d 410.

4

Louisiana Code of Criminal Procedure article 894.1 sets forth the factors for the trial court to consider when imposing sentence. While the entire checklist of La. C.Cr.P. art. 894.1 need not be recited, the record must reflect the trial court adequately considered the criteria. Scott, 228 So. 3d at 211. The articulation of the factual basis for a sentence is the goal of La. C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. The trial judge should review the defendant's personal history, his prior criminal record, his family dependents, the seriousness of the offense, the likelihood that he will commit another crime, and his potential for rehabilitation through correctional services other than confinement. On appellate review of a sentence, the relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. Scott, 228 So. 3d at 211.

The factors guiding the decision of the trial court are necessary for an appellate court to adequately review a sentence for excessiveness and, therefore, should be in the record. State v. Shipp, 98-2670 (La. App. 1st Cir. 9/24/99), 754 So. 2d 1068, 1072. Otherwise, a sentence may appear to be arbitrary or excessive and not individualized to the particular defendant. State v. Green, 558 So. 2d 1263, 1268 (La. App. 1st Cir.), writ denied, 564 So. 2d 317 (La. 1990). When the reasons for an apparently severe sentence in relation to the particular defendant and the actual offense committed do not appear in the record, a sentence may be vacated and remanded for resentencing. Shipp, 754 So. 2d at 1072.

Thus, to aid the trial court in its obligation to fairly sentence the defendant, La. C.Cr.P. art. 894.1 sets forth factors for the trial court to consider. While the trial courts are afforded great discretion in sentencing, the appellate court still must review the sentences to ensure that there has been no abuse of that discretion. To aid the appellate court in this review in the context of a habitual offender proceeding, La. R.S. 15:529.1 directs that the trial court shall provide written

5

reasons for its determination. Here, the trial court did not provide written reasons, nor does the record reflect that the court considered the enumerated criteria.

In State v. Dorthey, 623 So. 2d 1276, 1280-81 (La. 1993), the Louisiana Supreme Court opined that if a trial judge were to find that the punishment mandated by the Habitual Offender Law makes no "measurable contribution to acceptable goals of punishment" or that the sentence amounted to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime," he has the option, indeed the duty, to reduce such sentence to one that would not be constitutionally excessive. In State v. Johnson, 97-1906 (La. 3/4/98), 709 So. 2d 672, 677, the Louisiana Supreme Court further noted that, given the legislature's constitutional authority to enact statutes such as the Habitual Offender Law, it is not the sentencing court's role to question the legislature's wisdom in requiring enhanced punishments for multiple offenders. Instead, the sentencing court is only allowed to determine whether the particular defendant before it has proven that the mandatory minimum sentence is so excessive in his case that it violates the constitution. Departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations. Johnson, 709 So. 2d at 677.

Dorthey and Johnson recognize that sentences within the range provided by the legislature may yet be constitutionally excessive. Generally, defendants employ this body of caselaw in search of a sentence below the mandatory minimums. Here, the defendant received a maximum sentence under the sentencing scheme. In arguing for a lesser sentence, he notes that the predicate offense was committed when he was sixteen years old, and the present conviction was not for a crime of violence. He further argues that, if committed today, Count I on his 2015 bill of information would not violate the referenced statute due to the amendment to La. R.S. 14:95(E) and that the sentencing range has been reduced

under La. R.S. 14:95.1. While the trial court may very well have considered these facts, we have nothing in the record to confirm this nor anything to review.

Pursuant to the applicable version of La. R.S. 14:95(E), whoever commits the crime of illegal carrying of weapons while in the possession of or during the sale or distribution of a controlled dangerous substance, "the offender shall be [...] imprisoned at hard labor for not less than five years nor more than ten years without the benefit of probation, parole, or suspension of sentence." Additionally, as to the crime of possession of a firearm by a convicted felon, the applicable version of La. R.S. 14:95.1(B) provides that the punishment for such an offense is "imprison[ment] at hard labor for not less than ten nor more than twenty years without the benefit of probation, parole, or suspension of sentence[.]"

Under the applicable version[5] of the Habitual Offender law, "[i]f the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction." La. R.S. 15:529.1(A)(1). Accordingly, the sentencing range for the defendant's conviction on Count I was imprisonment at hard labor between five and twenty years and, for Count II, imprisonment at hard labor between ten and forty years. As noted, following the trial court's ruling on the defendant's Motion to Reconsider Sentence, on Count I, the defendant's sentence was reduced to twenty years imprisonment at hard labor, without benefit of probation, parole, or suspension of sentence and, on Count II, the defendant's sentence remained

---

[5]See La. R.S. 15:529.1(K)(1) (except as otherwise provided, "the court shall apply the provisions of this Section that were in effect on the date that the defendant's instant offense was committed."). Accordingly, we apply the version of La. R.S. 15:529.1(A)(1) in effect at the time the defendant committed the instant offenses on January 16, 2015.

7

unchanged: forty years imprisonment at hard labor, without benefit of probation, parole, or suspension of sentence.[6]

The legislature passed the Habitual Offender Law to deter and punish recidivism. Under this statute, a defendant with multiple felony convictions is treated as a recidivist who is to be punished for the instant crime in light of his continuing disregard for the laws of our state. He is subjected to a longer sentence because he continues to break the law. See Johnson, 709 So. 2d at 677.

Maximum sentences may be imposed for the most serious offenses and the worst offenders or when the offender poses an unusual risk to the public safety in light of his past repeated criminality. State v. Parker, 2012-1550 (La. App. 1st Cir. 4/26/13), 116 So. 3d 744, 754, writ denied, 2013-1200 (La. 11/22/13), 126 So. 3d 478. The legislature has crafted the scheme to take the seriousness of the offense into account. The underlying offense is assigned a sentencing range by the legislature, and the second or subsequent offender statute provides a multiplier for a maximum sentence based upon the number of proven prior offenses. The minimum within the range is a fraction of the maximum. So, for example, for every second offender, the legislature has crafted a sentencing range of not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction. All second offenders can then be treated individually by the trial court when tailoring a sentence within the provided range.

Here, while it is true that this defendant was previously convicted of a felony, the same is true of all defendants found to be second offenders. Furthermore, the upper end of the range accounts for the severity of the offense the State seeks to enhance. Thus, to say that a defendant should be sentenced to the

_____

[6]The predicate conviction used under La. R.S. 14:95.1 and the predicate conviction used under La. R.S. 15:529.1 were obtained on the same day. Multiple convictions obtained on the same day prior to October 19, 2004, shall be counted as one conviction for the purpose of this Section. See La. R.S. 15:529.1(B). In the instant case, the defendant was convicted in October of 2005, so the convictions are treated separately.

8

maximum because of the severity of his crime ignores the fact that the legislature has designated a range within which just those offenders should be sentenced.[7] One cannot distinguish a particular offender by simply pointing out that he falls within a category of like offenders. One can distinguish the offender by considering, among other things, those factors contained in La. C.Cr.P. art. 894.1.[8]

After a thorough review of the record, it appears the trial court did not supply any reasons, either oral or written, for the sentence imposed. Accordingly, we question whether the trial court adequately complied with Article 894.1. The

---

[7]While ameliorative sentencing changes may not apply retroactively, they may guide the court when imposing a sentence. See State v. Thompson, 2022-01391 (La. 5/2/23), 359 So. 3d 1273, 1276 (per curiam).

[8]While our jurisprudence demonstrates a healthy reticence toward remand when it is not apparent from the record that the trial court considered or reviewed the Article 894.1 criteria, courts have certainly been willing to remand within the context of post-conviction relief. See State v. Allen, 2022-00508 (La. 11/1/22), 348 So. 3d 1274 (per curiam); State v. Thompson, 2022-01391 (La. 5/2/23), 359 So. 3d 1273 (per curiam).

The importance of compliance with Article 894.1 in sentencing is highlighted in Justice Crighton's concurring opinion in State v. Toney, 2021-01805 (La. 1/26/22), 332 So. 3d 77:

> [I] write separately to emphasize the importance of a recitation of full and comprehensive reasons for the trial court's consecutive sentences. Although the trial court need not articulate every aggravating and mitigating circumstance outlined in La. C.Cr.P. art. 894.1, the record must reflect that he or she adequately considered these guidelines in particularizing the sentence to the defendant. State v. Smith, 433 So.2d 688, 698 (La. 5/23/83). In my view, it is imperative the trial court provide an adequate expression of the reasons for sentences such as these, some of which reach the maximum allowed.

Justice Crighton considered the loss of judicial economy caused by the failure to establish in the record that the factors were considered or reviewed, which he opined could be avoided by conducting a few additional steps in the trial court, in State v. Aguliar-Benitez, 2021-00174 (La. 10/10/21), 332 So. 3d 618, 622 (per curiam), as follows:

> In the absence of a PSI, however, I believe a full sentencing hearing should be conducted in which the trial court is presented with all mitigating and aggravating circumstances, so that the trial court can carefully apply the sentencing guidelines provided in La. C.Cr.P. art. 894.1. Moreover, sentencing is a critical stage of the proceedings at which the right to the effective assistance of counsel is sacrosanct. See generally State v. Harris, 2018-1012 (La. 7/9/20), __ So. 3d __, available at 2020 WL 3867207. Even in the absence of a PSI, it is incumbent upon both the State and defense counsel to call witnesses and present evidence to inform the court of the nature of the person standing before it who is to be sentenced. Furthermore, a fully developed record is crucial for appellate review, especially if, after repeated and fruitless remands, a reviewing court decides it is appropriate to amend the sentence, pursuant to State v. Telsee, 425 So. 2d 1251 (La. 1983), which the opinion offers as one option for an appellate court to consider when it is faced with the alternative of repeated unfruitful remands.

9

trial court may have good reasons for imposing the terms of imprisonment, but those reasons are not articulated and do not appear in the record before us. While we do not specifically find this sentence to be excessive, by remanding the case for resentencing, we give the trial court an opportunity to state sufficient reasons to justify the imposition of the maximum sentence. See Shipp, 754 So. 2d at 1072-73; State v. Moses, 615 So. 2d 1030, 1035 (La. App. 1st Cir.), writ denied, 624 So. 2d 1223 (La. 1993); Green, 558 So. 2d at 1268. By remanding, we also allow for the defendant to inform the court, if he can, of factors that mitigate toward a lesser sentence. Accordingly, the instant sentence is vacated and the case is remanded to the trial court for resentencing.

## CONCLUSION

For the above and foregoing reasons, the defendant's habitual offender adjudication is affirmed, his sentence is vacated, and this matter is remanded for resentencing by the trial court.

**HABITUAL OFFENDER ADJUDICATION AFFIRMED; SENTENCE VACATED; REMANDED.**